## 51639. AVERY v. THE STATE.

CLARK, Judge.

The issue in this appeal from a conviction of aggravated assault concerns the proper allocation of the burden of persuasion as to a defense of insanity.

At his trial, defendant did not deny that he had grabbed the gun of a DeKalb County police officer and had shot him in the hand. Rather, he contended that he was unable to remember the incident and that he was not criminally responsible for his actions at the time.

There was testimony to the effect that defendant was a peaceable man whose violent actions were triggered earlier in the evening by a blow to the head. Dr. Allard, who is employed by the sheriff's department to attend the medical needs of prisoners, testified that defendant had an "abrasion of the right temporal area and the forehead" and that he may have received a brain concussion from the head injury. The doctor further stated concussions sometimes cause extreme violent behavior wherein the actor, while conscious, does not know what he is doing.

The evidence was sufficient to create an issue of fact as to defendant's mental capacity and to authorize a charge on the law of insanity. See *Teasley v. State,* 228 Ga. 107 (184 SE2d 179). While the court properly charged this defense, the sole reference to the burden of persuasion was stated as follows: "Ladies and gentlemen, if you believe the contentions of the defendant, that is, that he had suffered a concussion, and that he did not know what he

was doing, then it would be your duty to acquit."

After slightly more than two hours of deliberation, the jury requested additional instructions as to the burden of persuasion of this defense.[1] The court instructed the jury in the following manner: "I will just state to you again that the law provides: The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted. A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. Every person is presumed to be of sound mind and discretion, but the presumption may be rebutted."

In a criminal prosecution, due process requires the state to prove beyond a reasonable doubt every essential element of the crime charged. In re Winship, 397 U. S. 358 (90 SC 1068, 25 LE2d 368); Mullaney v. Wilbur, 421 U. S. 684 (95 SC 1881, 44 LE2d 508); *Grace v. Hopper,* 234 Ga. 669 (217 SE2d 267); *Moore v. State,* 137 Ga. App. 735; *Johnson v. State,* 137 Ga. App. 740. It is our view that a finding of insanity necessarily negates the essential element of criminal intent and that the state must therefore bear the burden of proving a defendant's sanity beyond a reasonable doubt.

Where a person lacks the mental capacity to distinguish between right and wrong in relation to his criminal act, he cannot possess sufficient mental capacity to form criminal intent. This basic principle of the common law was recognized by the Georgia courts as early as 1868: "It is, in all crimes, one of the ingredients of the offense that there shall be a joint operation of act and

---

[1]The jury's foreman asked: "Does the state have to prove mental competence at the time of the offense. . . or does the defense have to prove he is mentally incompetent?"

intent, and an insane person cannot, in a legal sense, have any intent." *Long v. State,* 38 Ga. 491, 507.

The United States Supreme Court has likewise adopted the widely accepted view that a plea of insanity necessarily raises an issue as to criminal intent. In Davis v. United States, 160 U. S. 469, 490, the court quoted with approval the following language: "Sanity is an ingredient in crime as essential as the overt act, and if sanity is wanting there can be no crime, and if the jury entertain a reasonable doubt on the question of insanity, the prisoner is entitled to the benefit of the doubt." The court added, "How then upon principle or consistently with humanity can a verdict of guilty be properly returned, if the jury entertain a reasonable doubt as to the existence of *a fact which is essential to guilt, namely, the capacity in law of the accused to commit that crime?"* Davis v. United States, supra, p. 488. (Emphasis supplied.)

Although the Supreme Court in Leland v. Oregon, 343 U. S. 790 (72 SC 1002, 96 LE 1302), declined to apply to the states the holding of Davis—that the prosecution must prove sanity beyond a reasonable doubt—Leland was written long before Winship adopted the reasonable doubt standard as an element of due process. And while Leland was not specifically reversed by the court in either Winship or Mullaney, the issue of insanity was not presented in either of those cases.

It is an elementary principle of federal jurisdiction that those questions not directly involved in the appeal or not presented to the court below or not necessary to the final determination of the case will not be decided by the Supreme Court. See Alabama Public Service Commission v. Southern R. Co., 341 U. S. 341 (71 SC 762, 95 LE 1002); City of Cincinnati v. Vester, 281 U. S. 439 (50 SC 360, 74 LE 950). Thus the court was bound to abstain from a reconsideration of the Leland insanity issue in these latter cases. In determining whether Leland is viable today, we examine the rationale and guiding principles of the most recent pronouncements by our nation's supreme tribunal.

The underlying premise of Leland—that the Fourteenth Amendment's Due Process Clause does not incorporate the reasonable doubt standard of proof—was,

of course, clearly rejected in Winship. Mullaney articulated an even broader due process concept—one that is "concerned with substance rather than. . . formalism." Mullaney held (contrary to the prevailing Maine rule) "that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case," even though the absence of this factor was not, in the strict sense, a "fact necessary to constitute the crime" charged. "Maine has chosen to distinguish those who kill in the heat of passion from those who kill in the absence of this factor. . . By drawing this distinction, while refusing to require the prosecution to establish beyond a reasonable doubt the fact upon which it turns, Maine denigrates the interests found critical in Winship." Mullaney, supra.

If Leland was not impliedly overruled by Winship, then surely the rationale of Mullaney had this effect. Leland undermines the interests found critical in Winship and cannot be reconciled with the more recent decisions. We are thus compelled to conclude that current due process standards require the prosecution to prove beyond a reasonable doubt a defendant's sanity when the issue is properly raised.

In reaching this conclusion, we have carefully studied the views expressed by our Supreme Court Justices in *Grace v. Hopper,* 234 Ga. 669 (217 SE2d 267). In that case, the court considered an ambiguous charge which initially placed on the defendant the burden of proving his insanity to the reasonable satisfaction of the jury, but which also instructed the jurors to acquit if the defendant's mental capacity created a reasonable doubt as to his guilt.

Justice Undercofler, writing for three members of the court, stated that "the existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of the crime." P. 674. Accordingly, he concluded that the prosecution need not prove, beyond a reasonable doubt, the sanity of a defendant.

Justice Undercofler's opinion, however, is contrary to the view expressed by a majority of the court. Justices

Ingram and Gunter dissented on the ground that the charge placed an impermissible burden on the defendant to prove his insanity. They expressed the opinion that an insane person cannot possess the requisite mens rea and that the reasonable doubt standard must therefore be imposed on the sanity issue in order for the state to carry its burden of proving the essential element of intent.

Justice Hall's concurrence was based upon a reading of the charge which, in his opinion, "clearly informs the jury that in order to convict they must find the defendant to be sane beyond a reasonable doubt." (P. 678). Thus, he concluded, the burden on insanity "quite properly remained at all times upon the prosecution." (P. 678).

Likewise, Justice Hill was of the opinion that the charge required a finding of sanity beyond a reasonable doubt to authorize a conviction. In his view, "the charge, plus recharge, when taken as a whole, did not violate the requirement of In re Winship . . . that due process 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime. . .,' *including sanity.*" P. 682. (Emphasis supplied.)

Unlike the instructions at issue in *Grace,* the charge here unambiguously failed to place the burden of persuasion upon the state. In fact, the only reference to this burden contained in the charge was the court's instruction to acquit "if you believe the contentions of the defendant." This language had the obvious effect of placing the persuasion burden upon the defendant to prove his "contention" of insanity. Under other circumstances, this court has found similar verbiage to have a burden-shifting effect. *Henderson v. State,* 134 Ga. App. 898 (216 SE2d 696); *Graham v. State,* 135 Ga. App. 825 (219 SE2d 477);[2] *Burns v. State,* 135 Ga. App. 842 (219 SE2d 487). The court's failure to instruct the jury, either in the charge or upon the jury's request, that the state must prove sanity beyond a reasonable doubt constituted error, requiring a new trial.

---

[2]In *Graham,* we stated, "Not only does the instruction tend to limit the verdict of acquittal to the jurors' belief of the accused's defenses; it also implies a

Defendant further contends that the trial court's use of the "presumption of sanity" in its charge was burden-shifting and erroneous in view of positive evidence of insanity. In considering the effect of this presumption upon the burden of proof, we must acknowledge the profound confusion which permeates this problematical subject. Despite the myriad legal opinions and scholarly articles in this area, there is little agreement as to what evidentiary impact, if any, presumptions have or even what purpose they serve.

Some courts hold that the presumption of sanity is not evidence and that its effect dissipates upon the presentation of evidence to the contrary. See People v. Kernanen, 497 P2d 8 (Sup. Ct. Colo. 1972); McBaine, Presumptions: Are They Evidence? 26 Cal. L. Rev. 519, 554 (1938). This view, however, was recently rejected by our Supreme Court in *Johnson v. State,* 235 Ga. 486, 490 (2) (220 SE2d 448). There the court stated, "This contention [that the evidence presented by the defense had destroyed the presumption of sanity] is without merit for 'the jury is free to reject the testimony of expert (and lay) witnesses as to the sanity of the accused and rely on the presumption of sanity.' [Cits.]" See also *Gibson v. State,* 236 Ga. 175 (223 SE2d 150).

The Georgia rule on presumptions is similar to that utilized in New York, where the presumption survives as a "lingering inference" which the jury may consider in determining whether the state has proven sanity beyond a reasonable doubt. The policy underlying this rule has been explained in the following manner: "This presumption has . . . served two functions. First, it eliminates the need for the prosecutor to introduce evidence of defendant's sanity as part of his case in chief in situations where defendant's mental capabilities are not in issue. Second, in cases where defendant does put his sanity in issue, the presumption, as a *procedural* device,

---

greater burden on the defendant by equating his defenses with his 'contentions.' As the defendant was being tried for voluntary manslaughter rather than perjury, the truth of his contentions are material only to the extent that they may create a reasonable doubt as to his guilt."

drops from the case; but the 'human experience' element underlying the presumption—that sanity is the normal condition of man—stays in the case and can be considered by the jury along with whatever other evidence. . .the prosecutor offers to sustain his burden of proving sanity beyond a reasonable doubt." People v. Silver, 33 N. Y. 2d 475 (310 NE2d 520) (1974).

We thus conclude that an instruction on the presumption of sanity is not burden-shifting, even in those cases where the defendant has introduced evidence of insanity to rebut the presumption. The trial court's reference to the presumption of sanity in its charge thus affords no ground for a reversal.

The judgment below must nevertheless be reversed due to the court's failure to instruct the jury that sanity must be proven by the state beyond a reasonable doubt.

*Judgment reversed. Bell, C. J., and Stolz, J., concur.*

SUBMITTED JANUARY 13, 1976 — DECIDED FEBRUARY 17, 1976 — REHEARING DENIED MARCH 11, 1976 — ▮▮▮▮▮▮▮▮

*Wynn Pelham,* for appellant.

*Richard Bell, District Attorney, Calvin A. Leipold, Assistant District Attorney,* for appellee.