34256. GODFREY v. THE STATE.

HALL, Justice.

Appellant, Robert Franklin Godfrey, was tried in Polk County for the murder of his wife and mother-in-law and for aggravated assault on his eleven-year-old daughter. Following his conviction by a jury, he was sentenced to death for each of the murders and to 10 years imprisonment for the aggravated assault. He appeals to this court on enumerated errors and for mandatory review of the death sentences imposed.

*I. Summary of the Evidence*

There was evidence presented in court from which the jury was authorized to find the following:

On September 5, 1977, appellant's wife left him after he cut some of her clothes off her body with a knife. She moved in with her mother, refused to move back home, and filed for divorce. She also charged him with aggravated assault.

On the morning of September 20, 1977, Appellant, who was employed as a male nurse, told a female nurse that he was getting a divorce and it would all be over on the twenty-first. (The divorce hearing was set for the twenty-second.) On the same day, Appellant's mother-in-law called him at work and told him that Mrs. Godfrey would telephone him that evening. She did call, but would not agree to halt the divorce proceedings for an

attempted reconciliation. Mrs. Godfrey called back later and again refused to attempt reconciliation.

Appellant took his single action rifle-shotgun and walked to the mother-in-law's trailer home, in which Mrs. Godfrey, her daughter, and her mother were playing a game around a table. Appellant killed his wife by shooting her in the head, firing through a window. He struck his eleven-year-old daughter on the head with the barrel of the gun as she ran for help. Appellant then shot his mother-in-law, killing her. He then called the Polk County Sheriff's office, identified himself, reported the crimes and gave directions to the trailer. He waited at the scene until a policeman arrived. Appellant told the policeman "they're dead. I killed them," and directed the policeman to the murder weapon which was resting in the branches of an apple tree.

After being arrested and advised of his rights, appellant was taken to the police station where he told a police officer that he had committed a "hideous crime" which he had thought about for eight years and would do again.

The theory of the defense at trial was insanity. The defense psychiatrist described Appellant's behavior during the murders as a "dissociative attack," but did not testify that this was a psychosis of any kind. Appellant denied remembering anything from the time of his second telephone conversation with Mrs. Godfrey until he "woke up" in jail the following day. The defense psychiatrist testified that Appellant could not remember the crimes even after receiving an injection of sodium amytal, a "truth serum," although the drug did not affect him as much as most people, perhaps because of his history of heavy drinking.

The state presented testimony from experts and other witnesses that Appellant was sane and could distinguish right from wrong.

## II. Enumerations of Error

1. Enumerations of error 1, 2 and 3 incorporate what are generally referred to as the general grounds.

On appeal this court does not review the weight of the evidence but examines its sufficiency. *Peek v. State,* 239 Ga. 422 (238 SE2d 12) (1977). If there is any evidence to

support it the verdict will not be disturbed on appeal. *Drake v. State,* 241 Ga. 583, 585 (247 SE2d 57) (1978); *Campbell v. State,* 240 Ga. 352, 354 (240 SE2d 828) (1977). There was abundant evidence admitted at trial to support these verdicts.

Appellant's contention that the evidence as to his sanity raised a reasonable doubt as to his guilt is without merit; there was absolutely no evidence, even from the defense psychiatrist, that Appellant had been at any time pyschotic or "insane." See *Spivey v. State,* 241 Ga. 477, 478 (246 SE2d 288) (1978). These enumerations are without merit.

2. Enumerations 5 and 14 urge that the trial court erred in admitting over objection certain photographs taken at the scene of the crime depicting the victims' wounds and the surrounding area. Portions of the heads of both victims were literally blown away, and when officers arrived blood was dripping from the ceiling of the trailer.

We have repeatedly held that photographs of this sort are generally admissible. E.g., *Stevens v. State,* 242 Ga. 34, 38 (247 SE2d 838) (1978); *Burger v. State,* 242 Ga. 28, 31 (247 SE2d 834) (1978); *White v. State,* 242 Ga. 21, 22 (247 SE2d 759) (1978); *Lamb v. State,* 241 Ga. 10, 13 (243 SE2d 59) (1978); *Moore v. State,* 240 Ga. 807, 816 (243 SE2d 1) (1978); *Davis v. State,* 240 Ga. 763, 766-767 (243 SE2d 12) (1978).

Appellant cites in support of his objection the following sentence from *Holcomb v. State,* 130 Ga. App. 154, 155 (202 SE2d 529) (1973): "Where, as here, the cause of death is not in dispute, and the defendant admits to having fired the fatal bullet, a trial judge would often be well advised to sustain an objection to their [photographs'] admissibility on the ground that they add nothing of probative value to the record." This sentence is dicta; it does not correctly state the law of Georgia; it has proved confusing to trial counsel; and we have disapproved it. *Stevens,* supra, at 39. We agree with the state that a criminal defendant has no right to prevent the jury from seeing the crime scene and the victims' injuries. The trial court did not err in admitting these photographs.

3. In enumerations 6 and 7, Appellant urges that the grand jury which indicted him was unconstitutionally composed and that it was error to dismiss his motion challenging its composition.

These murders occurred on September 20, 1977; counsel was notified of his appointment to represent Appellant on September 21, 1977; and he has never been relieved of those duties notwithstanding some question he raised concerning Appellant's ability to pay him. Appellant was indicted by the grand jury on December 15, 1978. Thus, Appellant was represented by counsel long before indictment, but no objection to the composition of the grand jury was raised prior to indictment.

The general rule in Georgia is that for a challenge to the array of grand jurors "to be entertained by the trial court, it must be made prior to the return of the indictment or the defendant must show that he had no knowledge, either actual or constructive, of such alleged illegal composition of the grand jury prior to the time the indictment was returned; otherwise, the objection is deemed to be waived. *Estes v. State,* 232 Ga. 703, 708 (208 SE2d 806) (1974)." *Sanders v. State,* 235 Ga. 425, 426 (219 SE2d 768) (1975) cert. den., 425 U. S. 976 (96 SC 2177, 48 LE2d 800) (1976).

There was no showing that Appellant did not have reason to believe that an indictment would be returned against him, having had counsel appointed three months before indictment and having admittedly killed two persons. *Holsey v. State,* 235 Ga. 270 (219 SE2d 374) (1975); *Wooten v. State,* 224 Ga. 106 (160 SE2d 403) (1968). There is no contention that the alleged illegality of the grand jury composition was unknown prior to indictment.

To avoid being held to have waived the objection, Appellant argues that the indictment was rendered by a specially summoned grand jury, and he did not expect it until several weeks later. This is not a ground of exemption from the waiver rule. A defendant has no right to be notified in advance of grand jury proceedings, and has no right to be there. Indeed, *Howard v. State,* 60 Ga. App. 229, 235-236 (4 SE2d 418) (1939) clearly shows that the state law contemplates that indictments shall be

returned in secret, without the accused's knowing exactly when.

Appellant was correctly held to have waived his right to object to the composition of the grand jury, and enumerations 6 and 7 are without merit.

Even were we to consider the merits of this point, it would fail. The primary thrust of Appellant's attempted evidence at the motion hearing was that persons between 18 and 21 years of age were not present on the grand jury although Georgia law now authorizes them to serve. This does not show illegality of the grand jury: age is not a recognized class for purposes of grand jury representation. *Fouts v. State,* 240 Ga. 39, 41 (239 SE2d 366) (1977); *Barrow v. State,* 239 Ga. 162 (236 SE2d 257) (1977); *State v. Gould,* 232 Ga. 844 (209 SE2d 312) (1974).

4. In enumerations 8 and 29, Appellant alleges the trial court erred in refusing to charge the law of manslaughter.

There was no evidence in this case of "sudden, violent and irresistible passion resulting from serious provocation to warrant charging on voluntary manslaughter under Code Ann. § 26-1102.

5. In enumerations 9 and 10, Appellant alleges the trial court erred twice in failing to grant a mistrial, sua sponte. Enumeration 9 complains of the prosecutor's final argument during which a relative of the deceased victims fainted in the courtroom. Enumeration 10 objects to that part of the prosecutor's argument which ridiculed the testimony of the defense psychiatrist. No mistrial motion was made on either ground.

Our review of the supplemental record, containing a transcript of a hearing on these points, shows that the trial court did not err as charged, as no ground for mistrial appears.

Accordingly, enumerations 9 and 10 are without merit.

6. In enumeration 11, Appellant alleges that the trial court erred in failing to grant a mistrial upon application of defense counsel showing through one of the bailiffs that the jurors were discussing the case and commenting upon the evidence prior to the start of their deliberations. A bailiff testified that "Well, I heard

someone say something about the defendant showing no emotion when he saw those pictures [of the victims]." There was no further evidence.

From the question asked, the bailiff was undoubtedly referring to a juror's comment on the demeanor of the defendant. There is no indication of pre-judgment of evidence in violation of the instructions of the trial court. Nor does it appear that there was an unauthorized communication to a bailiff. Under these circumstances the trial court did not err in denying the Appellant's motion for a mistrial. See, *Battle v. State,* 234 Ga. 637 (217 SE2d 255) (1975).

7. In enumeration 15, Appellant complains of the overruling of his motion for a continuance. A continuance was sought to allow further time to prepare for trial and to allow community sentiment aroused by the crime to cool.

The granting of a continuance rests in the sound discretion of the trial judge. Code Ann. §§ 27-2202, 81-1419. Counsel were notified of their appointment on September 21, 1977 and the motion for continuance was filed February 1, 1978, and heard February 9, 1978. Under these circumstances, and in light of our disposition of enumeration 17 below, we cannot say the trial court abused its discretion. *Campbell v. State,* 240 Ga. 352, 356 (240 SE2d 828) (1977); *Pulliam v. State,* 236 Ga. 460, 461-462 (224 SE2d 8) (1976).

8. In enumerations 16 and 21, Appellant alleges the trial court erred in denying his motion to sever the two murder charges. He urges that the joint trial of two "gruesome killings is inherently prejudicial." This contention is totally without merit. Code Ann. § 26-506 (b) and (c); *Stewart v. State,* 239 Ga. 588, 589 (238 SE2d 540) (1977); *Jarrell v. State,* 234 Ga. 410, 413 (216 SE2d 258) (1975); *Henderson v. State,* 227 Ga. 68 (179 SE2d 76) (1970). Neither were counts 1 and 2 objectionable because each was sufficient to charge both felony murder and malice murder.

Enumerations 16 and 21 are without merit.

9. In enumeration 17, Appellant urges that the court erred in overruling his motion for a change of venue, which was made on the theory that pre-trial publicity made it impossible for him to obtain an unbiased jury.

"The test as to whether pre-trial publicity has so prejudiced a case that an accused cannot receive a fair trial is whether the jurors summoned to try the case have formed fixed opinions as to the guilt or innocence of the accused from the pre-trial publicity. *Krist v. Caldwell,* 230 Ga. 536, 537 (198 SE2d 161) (1973)." *Wilkes v. State,* 238 Ga. 57, 58-59 (230 SE2d 867) (1976). Accord, *Burnett v. Smith,* 240 Ga. 681, 684 (242 SE2d 79) (1978). See Code Ann. §§ 27-1101, 27-1201.

After studying the voir dire examination in this case we conclude that it does not show that the jurors selected to try Appellant's case had formed fixed opinions as to guilt or innocence from publicity in the community.

Enumeration 17 is therefore without merit.

10. Appellant alleges in enumeration 18 that the trial court erred in overruling his motion to compel depositions of witnesses, or in the alternative to order a preliminary hearing.

Appellant correctly concedes that there is no statutory provision for depositions or discovery in criminal cases in this state. *Brown v. State,* 238 Ga. 98 (231 SE2d 65) (1976). After indictment and subsequent conviction the lack of a commitment hearing will not be construed as reversible error. *State v. Middlebrooks,* 236 Ga. 52 (222 SE2d 343) (1976) and cases cited therein. Moreover, the defense attorney was repeatedly given access to the entire state file, and nothing prevented him from interviewing witnesses. This enumeration is without merit.

11. In enumeration 19, Appellant makes a general attack on the constitutionality of the Georgia death penalty statute and specifically attacks the statutory aggravating circumstance described in Code Ann. § 27-2534.1 (b) (7) ("The offense of murder . . . was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim") as unconstitutionally vague.

The Georgia death penalty statute (Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2534.1)) has been upheld by this court and by the Supreme Court of the United States. *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); Gregg

v. Georgia, 428 U. S. 153 (96 SC 2909) (1976). We have previously considered the vagueness issue raised by Appellant, and have upheld Code Ann. § 27-2534.1 (b) (7) in *Harris v. State,* 237 Ga. 718, 731-733 (230 SE2d 1) (1976) and *Lamb v. State,* 241 Ga. 10, 14-15 (243 SE2d 59) (1978). The statute is not unconstitutional for any reason alleged.

12. In enumerations 4, 22, 23, 24, 25, 26, 27, 28, 30, and 31, Appellant challenges instructions given by the trial court, or contends that the court erred in refusing to give requested instructions.

We have examined each enumeration and find that the court covered the matter correctly in his instructions, or that the requested charge does not correctly reflect the law, or that the giving of the requested charge would have been inappropriate.

13. In enumeration 32 Appellant states that the trial court erred in allowing the district attorney in his argument to read before the jury from decided cases.

Code Ann. § 24-3319 provides in part that "Counsel shall not be permitted, in the argument of criminal cases, to read to the jury recitals of fact or the reasoning of the court as applied thereto, in decisions by the Supreme Court or Court of Appeals."

The argument challenged was directed to the trial judge on matters of law. Although the jury was present, reading and arguing law to the court is not reversible error. *Potts v. State,* 241 Ga. 67, 75 (243 SE2d 510) (1978).

Appellant's other enumerations concern matters that will be considered in our sentence review.

### III. Sentence Review

In our sentence review we have considered the evidence concerning the crimes of murder and the aggravating circumstances found by the jury and the matters presented by Appellant.

We have reviewed the death sentence as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c)), as was done in *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974), and each subsequent case involving the death penalty under this statute.

With regard to the sentence our first consideration is:

"Whether the sentence of death was imposed under

the influence of passion, prejudice, or any other arbitrary factor" Code Ann. § 27-2537(c) (1).

Appellant alleges in enumeration 12 that the forceful argument of counsel which he alleges caused a spectator to faint (enumeration 10) and the comment by a juror concerning the demeanor of Appellant (enumeration 11) resulted in the sentence of death being imposed under the influence of passion and prejudice. We do not so find.

He also alleges in enumeration 33 that the District Attorney's argument to the jury at the sentencing stage which included quotations concerning the death penalty from an old Georgia case, caused the sentence of death to be imposed under the influence of passion and prejudice.

Our study of that portion of the District Attorney's argument shows that the judge referred to, the case, and the outcome, were all unidentified. The quotation was of minimal significance, and enumeration 33 contains no merit. *Ruffin v. State,* 243 Ga. 95 (1979) and cits.

We conclude that the sentences of death imposed here were not imposed under the influence of passion, prejudice, or any other arbitrary factor.

Our second consideration is:

"Whether, in cases other than treason or aircraft hijacking, the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 27-2534.1 (b)." Code Ann. § 27-2537 (c) (2).

The statutory aggravating circumstance found by the jury as to each murder was "the offense of murder was outrageously or wantonly vile, horrible and inhuman." Code Ann. § 27-2534.1 (b) (7).

The evidence supports the jury's finding of statutory aggravating circumstances, and the jury's phraseology was not objectionable. See *Ruffin v. State,* supra.

Although Appellant alleges "The Court erred in its instructions on the sentencing phase of the trial in that the instructions failed to make clear to the jury that they could recommend a life sentence even if they found evidence of a statutory aggravating circumstance, and failed to inform the jury that they were authorized to consider mitigating circumstances" we find that the court defined mitigating circumstances and charged "In

determining your verdict in this case you shall consider any mitigating circumstances which you find," as well as charging "even though you find the existence of a statutory aggravating circumstance or circumstances you could recommend a life sentence."

The charge of the trial court complies with the requirements laid down in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); *Hawes v. State,* 240 Ga. 327, 334 (240 SE2d 833) (1977) and *Spivey v. State,* 241 Ga. 477, 479 (246 SE2d 288) (1978).

The verdict is factually substantiated.

Our final consideration is: "Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Code Ann. § 27-2537 (c) (3).

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed and we find the similar cases listed in the Appendix support the affirmance of the death penalty in this case. Robert Franklin Godfrey's sentence to death is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur, except Jordan, J., who dissents as to Division 2, and Hill, J., who dissents.*

Argued November 20, 1978 — Decided February 27, 1979 — Rehearing denied March 27, 1979.

*J. Calloway Holmes, Jr., Gerry E. Holmes,* for appellant.

*John T. Perrin, District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.

Appendix.

*House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Smith v. State,*

236 Ga. 12 (222 SE2d 308) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976); *Dungee v. State,* 237 Ga. 218 (227 SE2d 746) (1976); *Banks v. State,* 237 Ga. 325 (227 SE2d 380) (1976); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977); *Gaddis v. State,* 239 Ga. 238 (236 SE2d 594) (1977); *Peek v. State,* 239 Ga. 422 (238 SE2d 12) (1977); *Westbrook v. State,* 242 Ga. 151 (249 SE2d 524) (1978); *Finney v. State,* 242 Ga. 582 (1978).